<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| | : | |
| NELSON ORTIZ, | : | |
| | : | Civil No. 21-19953 (RMB-MJS) |
| Plaintiff | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| COUNTY OF CUMBERLAND, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

_____

**APPEARANCES:**

Matthew A. Hamermesh, Esq.
Hangley Aronchick Segal Pudlin & Schiller
1415 Route 70 East, Suite 405
Cherry Hill, NJ 08034

Kyle M. Heisner
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th floor
Philadelphia, PA 19103
            On behalf of Plaintiff.

A. Michael Barker, Esq.
Greg Paul DiLorenzo, Esa.
Barker, Gelfand & James
210 New Road, Suite 12
Linwood, NJ 08221
            On behalf of Defendants R. Mendibles, D. Govan, Sergeant Hines and
Sergeant Fazzolari

Justin Robert White
Testa Heck Testa & White, PA

424 W. Landis Avenue
Vineland, NJ 08360
             On behalf of Defendant Cumberland County


RENÉE MARIE BUMB, Chief United States District Judge

        This matter comes before the Court upon (i) the Motion for Summary

Judgment filed by Defendants Sergeant R. Mendibles ("Mendibles"), Sergeant D.

Govan ("Govan"), Sergeant Hines ("Hines') and Corrections Officer Fazzolari

("Fazzolari") (collectively "the Officer Defendants") [Docket No. 119]; and (ii) the

Motion for Summary Judgment [Docket No. 120], filed by Defendant Cumberland

County ("Cumberland County").  Plaintiff Nelson Ortiz ("Plaintiff" or "Ortiz")

opposed both motions [Docket No. 125 ("Pl.'s Opp'n Br. to Officers."); Docket No.

127 ("Pl.'s Opp'n to CC")].  The Court has considered the parties submissions[1] and

---

[1] The Court will refer to the parties' submissions as follows: (i) the Officer
Defendants' Brief in Supp. of MSJ [Docket No. 119-4] ("Officers' Br."), their
Statement of Undisputed Material Facts [Docket No. 119-3 ("Officers' SOMF"),
their Reply Brief in Support of SJ [Docket No. 131 ("Officers' Reply Br."); their
Reply to Pl's Responses to Officer Defs' Statement of Facts [Docket No. 131-1
("Officers' RSOMF")], and their Reply to Pl's Counterstatement of Facts [Docket
No. 131-2 ("Officers' RCSOMF") (ii) Cumberland County's Brief in Supp. of MSJ
[Docket No. 120-2 ("CC's Br.")]; Cumberland County's Statement of Undisputed
Facts [Docket No. 120-1 ("CC's SOMF"], their Reply Brief in Supp. of MSJ [Docket
No. 132 ("CC's Reply Br.")], and their Reply to Pl's Statement of Material Facts
[Docket No. 132-1 ("CC's RCSOMF")] and (iii) P's Brief in Opp'n to MSJ by
Defendants Mendibles, Hines, Govan and Fazzolari [Docket No. 125](Pl's Br.
Opp'n Officers) Pl.'s Response to Officers' SOMF [Docket No. 125-1 ("Pl.'s Resp.
Officers' SOMF"), his Counterstatement of Facts to Officers' MSJ [Docket No. 126
("CSOMF to Officers"), his Brief in Opp'n to MSJ by Cumberland County [Docket
No. 127 ("Pl's Br. Opp'n CC")]; Response to Cumberland County's Statement of
Undisputed Material Facts [Docket No. 127-1 ("Pl.'s Resp. CC's SOMF")], and Pl's
Counterstatement of Facts to Cumberland County's MSJ [Docket No. 128

will determine the motions without oral argument pursuant to Federal Rule of Civil

Procedure 78(b) and Local Civil Rule 78.1(b).

The Officer Defendants' summary judgment motion presents the following

issues:  (i) whether there is a genuine issue of disputed fact as to whether Mendibles

used excessive force against Plaintiff, in two incidents, in violation of the Fourteenth

Amendment, and if so, whether he is entitled to qualified immunity; (ii) whether

Hines and Govan used excessive force against Plaintiff, in one incident, in violation

of the Fourteenth Amendment; (iii) whether Fazzolari failed to intervene in violation

of the Fourteenth Amendment, when Mendibles, Govan and Hines used excessive

force against Plaintiff; (iv) whether a deficiency in Cumberland County's training

and/or supervision concerning excessive use of force and failure to intervene caused

Mendibles, Hines, Govan and Fazzolari to violate Plaintiff's Fourteenth

Amendment due process right to be free from punishment as a pretrial detainee; (v)

whether the Court should strike the Deposition of Charles Lawson; and (vi) whether

Plaintiff is entitled to an adverse inference based on the Defendants' failure to

preserve surveillance video of the incident that occurred on October 2, 2021.

[Officers' Br.]

Cumberland County's summary judgment motion presents the following

issues: (i) whether Cumberland County adequately trained and supervised its

---

("CSOMF to CC").  Page citations to the briefs and supporting documents are to the
page numbers assigned to the document by CM/ECF on the top right corner of the
page.

correctional officers; (ii) whether Cumberland County properly and adequately investigated claims of excessive force; (iii) whether Cumberland County maintained adequate policies for providing medical care to Inmates through CFG Health Systems, L.L.C., a dismissed defendant.  [CC's Br.]

For the reasons that follow, the Court will **GRANT in part** Cumberland County's Motion for Summary Judgment; **GRANT in part** Mendibles' Motion for Summary Judgment based on qualified immunity; and **DENY** the remainder of the Officer Defendants' Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The parties disagree on much, but they agree that Plaintiff was a pretrial detainee in Cumberland County Jail on October 2, 2021, and Fazzolari, a corrections officer, ordered Plaintiff to shut up because he was repeatedly yelling to an inmate in another housing area. [Officers' RSOMF ¶ 1; Pl's Resp. CC's SOMF ¶¶ 1, 2.]  When Plaintiff ignored Fazzolari's order, Fazzolari told Plaintiff to "suit up," which they both understood to mean Plaintiff should put on his jumpsuit to go to the disciplinary pod. [Officers' RSOMF ¶ 3; Pl's Resp. CC's SOMF ¶ 3.]   Plaintiff responded that Fazzolari should call for backup, and he did.  [*Id.* ¶¶ 3, 5; Pl's Resp. CC's SOMF ¶¶ 3, 4.]

Plaintiff then asked Fazzolari if he could wear his sweatshirt instead of "suiting up" and bring his cup of coffee to the disciplinary pod.  [Officers' RSOMF ¶

7; Pl's Resp. CC's SOMF ¶ 4.]  Fazzolari consented, although it is typically not permitted.  [Officers' RSOMF ¶ 8; Pl's Resp. CC's SOMF ¶ 4.]  Hines and Fazzolari began the escort to the disciplinary pod.  [Officers' RSOMF ¶ 9;  Pl's Resp. CC's SOMF ¶ 5.]  Mendibles and Govan also responded to the call for backup. [Officers' RSOMF ¶¶ 10, 16; Pl's Resp. CC's SOMF ¶¶ 5, 6.]  Plaintiff, Mendibles, Hines and Govan gave different accounts of the circumstances surrounding what happened next, but Plaintiff and Mendibles agree that Mendibles smacked the coffee cup out of Plaintiff's hands.  [Officers' RSOMF ¶ 11, Pl's Resp. CC's SOMF ¶ 6.]  Plaintiff alleges he was burned by the coffee, but it is contested whether Plaintiff suffered any injuries on October 2, 2021, burns or otherwise. [Am. Compl. ¶ 22; Officers' RSOMF ¶ 21; Pl's Resp. CC's SOMF ¶¶ 15-18.]

After the coffee spill, Plaintiff submits Hines and Govan admitted they did not see Plaintiff do anything threatening to the officers present at the scene, but Cumberland County submits Hines testified that Plaintiff had "tensed up" and was threatening Mendibles verbally and with his body language.  [CC's RCSOMF ¶ 14.] The parties disagree on the circumstances that immediately followed the coffee spill, but Plaintiff testified Mendibles slapped him in the face,[2] and Mendibles testified that

---

[2] Specifically, Plaintiff testified, "As it burned me, then that is when he told me to shut the fuck up and he smacked me in my face."  [Ortiz Tr. 31:24-25 to 32:1.] Plaintiff testified the whole incident with Mendibles took fifteen seconds, "so yes, he knocked it [the coffee] out of my cup.  I said I had permission he said—smacked me and said shut the fuck up."  [*Id.* at 32:13-16.]

he pushed Plaintiff's head back with an open hand ("the coffee incident"). [Officers' RSOMF ¶ 11; Pl's Resp. CC's SOMF ¶ 6.]

It is undisputed that there was video surveillance of the coffee incident and Plaintiff's subsequent entry into the elevator, but the video was unavailable to Plaintiff in this action. [Officers' RCSOMF ¶ 1; Pl's Resp. CC's SOMF ¶ 1.]

It is also undisputed that Plaintiff submitted an inmate request form at Cumberland County Jail because he wanted to file a criminal complaint against Mendibles, and that Plaintiff was interviewed by Special Investigation Unit ("SIU") Investigator Hoffman ("Hoffman"). [Pl's Resp. CC's SOMF ¶¶ 7, 8.] Hoffman watched the surveillance video and presented a certification of his observations from the video. [*Id.*] Plaintiff disputes Hoffman's portrayal of the video—that Mendibles pushed Plaintiff's head rather than smacking his face. [*Id.*]

The parties agree that after Mendibles slapped or pushed Plaintiff in the face, Plaintiff did not resist their escort to the elevator, but they disagree on Plaintiff's description of the escort to the elevator ("the elevator incident"). [CC's RCSOMF ¶ 17.] Plaintiff testified that Govan held him in a chokehold from behind while Mendibles and Hines struck and kicked him seven to ten times in the ribs, arm and all along his right side, as Plaintiff tried to shield himself. [Officers' RCSOMF ¶ 19.] According to Plaintiff, this occurred while Govan was dragging him the very short distance to the elevator and continued in the elevator, but Plaintiff could not recall if they were striking him after the elevator doors closed. [Docket No. 119-6, Ortiz Tr. 42:9 to 44:23.] It is undisputed the Fazzolari was present, but it is disputed whether

6

there was any use of force by Mendibles, Hines and Govan after the slap or push in the face.  [Officers' RCSOMF ¶ 22.]  It is undisputed that Plaintiff later filed criminal complaints against Hines, Govan and Mendibles, which triggered an Internal Affairs investigation by the SIU at Cumberland County Jail.  [Pl's Resp. to CC's SOMF ¶ 10.]  Investigator Holbrook called a detective at the Cumberland County prosecutor's office and learned the charges had been dismissed.  [*Id.*]

As discussed below, Defendants object to the introduction of Inmate Christopher Lawson's deposition transcript.  Lawson testified that he saw one of the officers slap the coffee out of Plaintiff's hands and then start slapping him and grabbing him by his neck and dragging him onto the elevator.  [Officers' RCSOMF ¶¶ 24, 25.]  After Plaintiff got on the elevator, but before it went down, Lawson testified that he heard screaming and hollering "Please don't. Please stop."  [*Id.*]  Lawson clarified that he only observed the "smack" and he heard the rest.  [*Id.*]  After the incident, according to Lawson, an officer directed the inmate witnesses to sign statements that they did not witness the assault, under threat of losing their television and phone privileges.  [*Id.* ¶ 26.]

Cumberland County Department of Corrections ("CCDOC") Director Charles Albino ("Albino") testified in a deposition concerning CCDOC's training on use of force.  [Pl's Resp. CC's SOMF ¶ 12.]  He testified that the guiding principle of the training is to use the least amount of force necessary, but he also responded "I don't believe we have a specific policy that addresses passive resistance."  [*Id.*]  It is undisputed CCDOC officers are required to attend a correctional police academy

prior to employment, annual training, including supplemental training on the use of force, but that Albino could not confirm or deny whether Mendibles, Hines, Govan or Fazzolari actually received annual training on the use of force.  [*Id.* ¶ 13.]

Plaintiff points to the conflicting interpretations of Cumberland County's use of force policies by the Officer Defendants as evidence the training was deficient. [Pl's Br. Opp'n CC at 12.]  As an example, Plaintiff notes Govan testified that slapping, punching or kicking an inmate should never be permitted, but Fazzolari and Hines testified such force could be appropriate under certain circumstances.  [*Id.* at 13; CC RCOMF ¶¶ 34, 36.]  Mendibles and Govan agreed that if the October 2, 2021 incident occurred as Plaintiff alleged, the force Plaintiff alleged was used against him was excessive.  [*Id.* ¶ 35.]  From this, Plaintiff concludes Mendibles and Govan did not understand, and thus were not sufficiently trained on Cumberland County's use of force policy.  [Pl's Br. Opp'n CC at 13.]

Plaintiff also argues Cumberland County's conflict de-escalation policies and training were deficient.  [*Id.* at 15.]  Plaintiff notes the Third Circuit, in *Thomas v. Cumberland County*, 749 F.3d 217, 227 (3d Cir. 2014), found there were genuine issues of material fact as to whether Cumberland County was deliberately indifferent to the need for preservice training for officers on conflict de-escalation and intervention.  [*Id.*]  It is disputed whether Cumberland County now provides de-escalation or conflict resolution training to its officers as part of the overall training. [CC RCOMF ¶¶ 55-57.]

Next, Plaintiff argues the training was not frequent or substantial enough for the Officer Defendants to learn appropriate use of force. [Pl's Br. Opp'n CC at 13.] In support, Plaintiff notes Mendibles testified post-academy training was limited to signing an acknowledgment the officer received a copy of the policies, with no further instruction; whereas Cumberland County points to testimony by Mendibles, Hines and Govan that they undergo annual use of force training during firearms qualification and via the NJ Learn online platform. [CC RCOMF ¶ 37.] Albino testified that officers received annual training, but he could not confirm the training was consistently offered, what topics were covered, and that there was meaningful instruction on use of force. [Pl's Br. Opp'n CC at 14; CC RCOMF ¶¶ 41-42.] Plaintiff submits biannual training was 20-30 minutes and did not address proper techniques for use of force or intervention in excessive use of force. [CC RCOMF ¶¶ 43-47.] Training records suggest officers received little to no post-academy use of force training. [CC RCOMF ¶¶ 49-53.] Finally, Cumberland County failed to identify any written training materials on appropriate use of force in response to Plaintiff's discovery requests, which Cumberland County denies because it produced training files and jail policies. [CC RCOMF ¶ 54.]

Govan testified he read the policies, but not in recent memory, and he did not know exactly what the written policies stated. [CC RCOMF ¶¶ 38-39.] Albino could not identify training provided to officers on conflict de-escalation and intervention prior to October 2021, and none is found in the officers' training files. [CC RCOMF ¶¶ 55-56.]

Plaintiff also supports his deficient training claim with Mendibles' testimony that in 20-years at Cumberland County Jail, he never found an instance where use of force was unjustified, despite the fact that one year prior to October 2, 2021, Cumberland County's SIU determined excessive use of force was used.  [Pl's Br. Opp'n CC at 13-15; CC RCOMF ¶¶ 40, 73, 74.]

Finally, Plaintiff contends Cumberland County's deficient policies for inmate reporting and investigative procedures render it liable for the alleged constitutional violations by Mendibles, Hines, Govan and Fazzolari.  [Pl's Br. Opp'n CC at 15-19.] The deficiencies Plaintiff identifies are (i) in October 2021, lack of a written policy for inmate reporting excessive use of force [CC RCOMF ¶¶ 58, 74]; (ii) Cumberland County Jail lacked a warden on October 2, 2021, so even if there was an unwritten policy to report incidents to the warden, there was no warden, [CC RCOMF ¶¶ 58, 59]; (iii) Cumberland County's SIU investigative process is flawed because there is no policy to interview all appropriate witnesses [CC RCOMF ¶¶ 70-71] and SIU Investigator Holbrook has a custom of coaching officers on how to avoid discipline [CC RCOMF ¶¶ 79-82.]  Plaintiff offered three examples from 2017-2019, where SIU found an excessive use of force but failed to recommend additional training.  [Pl's Br. Opp'n CC at 17-18; CC RCOMF ¶¶ 75-78.]

In further support of his claim, Plaintiff notes Cumberland's designee on its use of force policies and training was unable to confirm or deny whether Cumberland County was aware of: (i) a single reported complaint of excessive use of force at Cumberland County Jail, (ii) any complaints by inmates at Cumberland

County Jail of excessive use of force within five years preceding October 2, 2021 or (iii) any discipline imposed on officers following complaints of excessive use of force, although Cumberland County states Director Albino was not employed until after Plaintiff's allegations arose, and the documents produced speak for themselves.  [*Id.* at 18-19; CC RCOMF ¶ 88.]

### B.  Procedural History

Plaintiff initiated this action by filing a *pro se* complaint on November 11, 2021 [Docket No. 1 ("Complaint")], and an Amended Complaint against Cumberland County, R. Mendibles, D. Govan, Sgt. Hines, Sgt. Fazzolar[i], Eugene Caldwell, Gabrielle Frisbey, and CFG Health Systems, L.L.C. ("CFG") on October 10, 2023. [Docket No. 52 ("FAC").]  Relevant here, Plaintiff asserted the following claims in his FAC: Count One—excessive force and failure to intervene in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 against Mendibles, Hines, Govan, Fazzolari, Caldwell in their individual and official capacities, and Cumberland County; Count Two—failure to provide medical care in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Frisbey, Cumberland County and CFG; Count Three—assault and battery under New Jersey common law against Mendibles, Hines and Govan in their official and individual capacities; Count Four—intentional infliction of emotional distress against Mendibles, Hines and Govan in their official and individual capacities.

On December 8, 2023, Plaintiff stipulated to dismissal of his claims against Frisbey, as well as his Eighth Amendment claims, and the state common law claims

in Counts Three and Four of the FAC.  [Docket Nos. 64, 66, 71.]  On March 14, 2024, Mendibles, Govan, Hines and Fazzolari filed a joint motion to dismiss all claims against them.  [Docket No. 82.]  In response to the motion to dismiss, Plaintiff did not oppose dismissal of his claims alleged under the Fifth Amendment, and this Court granted the motion to dismiss Plaintiff's excessive force and failure to intervene claims alleged under the Fourth Amendment, but permitted Plaintiff's excessive force and failure to intervene claims under the Fourteenth Amendment to proceed.  [Docket Nos. 108, 109.]  Plaintiff stipulated to dismissal of his claims against Caldwell on November 18, 2024.  [Docket No. 115.]  The summary judgment motions at issue here were filed in January 2025, with briefing completed on March 17, 2025.

## II.  LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law."  *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012) (citation modified).  A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of … identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (internal quotations omitted). The nonmovant's burden is to "point to concrete evidence in the record" to defeat summary judgment; mere allegations, conclusions, conjecture, and speculation are insufficient. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). District courts must view "the evidence in the light most favorable to the nonmoving party, [and] ask whether there is any genuine issue of material fact[.]" *Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 161 (3d Cir. 2019). "[E]nough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Id.* (citation modified).

## III. ANALYSIS

### A. Deposition of Christopher Lawson

In opposition to the Defendants' motions for summary judgment, Plaintiff relies, in part, on the deposition testimony of Charles Lawson, an inmate witness to the October 2, 2021 incident. [Pl's Br. Opp'n Officers at 9-12; CSOMF to Officers, Pl.'s Ex. 2, 126-2 ("Lawson Depo."); Pl's Br. Opp'n CC at 6-7; CSOMF to CC ¶¶ 23-25.]

In their reply briefs, the Officer Defendants and Cumberland County object to Plaintiff's introduction of the Lawson Deposition because Lawson ended the deposition shortly after defense counsel began cross-examining him. [Officers' Reply Br. at 10-11; CC's Reply Brief at 5.] Defense counsel noted, on the record, that they would move to strike the deposition if cross-examination was not completed. [Officers' Reply Br. at 11.] Plaintiff's counsel never rescheduled the deposition. [*Id.*]

Defendants object, pursuant to FRCP 56(c), to admission of the transcript of the Lawson Deposition in opposition to summary judgment because it "cannot be presented in a form that would be admissible in evidence." [*Id.*] Defendants contend that hearsay evidence may not be considered on summary judgment unless "capable of being admissible at trial[,]" for example, if the out-of-court declarant could later present the evidence through direct testimony. [*Id.* at 12.] Defendants explain that if Lawson is unable to testify at trial, his deposition transcript would be inadmissible under Federal Rule of Evidence 804(b)(1).[3] [*Id.* at 13.] Defendants do not argue Lawson would be barred from testifying at trial, but that his deposition transcript would not be admissible, and the deposition transcript is what Plaintiff relies on in opposition to summary judgment. In addition, Defendants move to strike[4] the

---

[3] FRE 804(b)(1) provides that former testimony from a lawful deposition, when a party had an opportunity to develop the testimony by direct, cross or redirect examination, is not excluded as hearsay.

[4] Federal Rule of Civil Procedure 7(b) provides, in relevant part:

(b) Motions and Other Papers.

(1) In General. A request for a court order must be made by motion. The motion must:

(A) be in writing unless made during a hearing or trial;
(B) state with particularity the grounds for seeking the order; and
(C) state the relief sought.

*See also* Local Civil Rule 7.1(b).

deposition transcript based on the unfairness resulting from Lawson's failure to submit to cross-examination.  [Officers' Reply Br. at 14-15.]

The Court is unable to predict whether Lawson will testify at trial, and therefore, whether his deposition transcript will be admissible.  However, because the Court ultimately concludes the Officer Defendants are not entitled to summary judgment with respect to the elevator incident, with or without exclusion of the Lawson Deposition from the record, the Court need not reach Defendants' objection.

### B.  Inferences Based on Missing Surveillance Video

The record establishes the coffee incident was captured on surveillance video, but the Defendants were unable to produce the video to Plaintiff in this action.  In opposition to the Officer Defendants' motion for summary judgment, Plaintiff relies on deposition testimony of Mendibles and Govan, who agreed that if the incident took place as Plaintiff alleges, the slap by Mendibles and their subsequent punching and kicking Plaintiff would constitute an excessive use of force.  [Pl's Br. Opp'n Officers at 10-11.]

Plaintiff further cites Hines' deposition testimony that he watched surveillance video of the incident on October 2, 2021, but he did not request to preserve the video

---

By raising their motion to strike informally in their reply briefs, Defendants deprived Plaintiff of the opportunity to formally respond to their motion.  Therefore, the Court will consider only whether the Lawson Deposition is admissible in the summary judgment record.

because he assumed someone else would. [*Id.* at 11-12.] Warden Caldwell testified that officers who are present when a use of force takes place should initiate a request to preserve video surveillance. [*Id.* at 11.] Mendibles also testified he did not request to preserve the video. [*Id.*]

Plaintiff submits that when a party spoliates tangible evidence, district courts have inherent powers to sanction the spoliator. [*Id.* at 16.] The video existed after Plaintiff put Defendants on notice by filing a criminal complaint, but the video was not preserved. [*Id.* at 17.]

The Officer Defendants oppose Plaintiff's request for sanctions because Plaintiff never filed a formal motion for an adverse inference prior to the summary judgment stage, and because Plaintiff's spoliation claim is baseless. [Officers' Reply Br. at 17.] They argue they never possessed the video and had no duty to preserve it; the duty belonged to the SIU Department. [*Id.* at 20.] They further argue there is no evidence the video was concealed or destroyed but only missing, therefore, there was no bad faith. [*Id.* at 22.]

Federal Rule of Civil Procedure 7 and this Court's Local Civil Rule 7.1, require, among others things, that a request for a court order be made by motion and the motion must state the relief sought. See *supra* n. 4. Plaintiff did not file a motion for sanctions. What's more, Plaintiff did not explicitly ask the Court for specific relief. In his response to the Officer Defendants' SOMF, Plaintiff states that he "intends to request an adverse inference at trial." [Pl's Resp. to Officers' SOMF ¶ 16.] The Court need not determine, at the summary judgment stage, whether

16

Plaintiff has established that Defendants violated Federal Rule of Evidence 37(e) by failing to preserve electronically stored information.[5]

### C.  Mendibles Is Entitled to Qualified Immunity for the Slap

*1. Legal standard*

"Qualified immunity protects [government officials] who make wrong but reasonable judgment calls absent clearly established law." *Urda v. Sokso*, No. 24-1804, 2025 WL 2046175, at *1 (3d Cir. July 22, 2025) (pertaining to police officers); *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (pertaining to corrections officers). The burden of proof falls on the party asserting the affirmative defense. *Id.* at 227.  A claim of qualified immunity requires a two-prong analysis. *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024).  The first prong is whether the plaintiff has established the violation of a constitutional right. *Id.*  The second prong is whether the constitutional right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*  For the constitutional right to be clearly established the law must have been sufficiently clear that every reasonable official would understand that what he is doing is unlawful. *Id.* at 191.  "Usually, that requires controlling precedent or a robust consensus of cases of persuasive authority." *Urda*, 2025 WL 2046175, at *1) (citation modified).  Only in rare circumstances is an officer's constitutional violation "so obvious that no precedent is needed." *Id.* at *2 (citation modified).  In most cases, "existing law must clearly establish that what this officer

---

[5] This matter will need to be resolved pre-trial before the Honorable Matthew J. Skahill.

did in these circumstances violated the plaintiff's rights." *Id.* (citation modified).
"The central question is whether the existing law gave the officer fair warning that
his *particular* conduct was unlawful." *Anglemeyer*, 92 F.4th at 191 (citation modified)
(emphasis in original).

### 2. There is no closely analogous clearly established law

In the context of pretrial detention, excessive force claims are evaluated under
the Fourteenth Amendment's objective reasonableness standard, as set forth in
*Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). This assessment considers
factors such as the need for force, extent of injury, and the detainee's resistance. *Id.*
at 397.

Here, taking the facts in the light most favorable to Plaintiff, Plaintiff was
cooperatively walking with Fazzolari and Hines to disciplinary confinement after
refusing an order to stop yelling across his tier and refusing to suit up until he was
granted his request to wear his sweatshirt and bring his coffee.  Mendibles responded
to Fazzolari's call for backup because Plaintiff initially refused to change into his
jumpsuit to go to disciplinary confinement.  When Mendibles saw the coffee cup, he
told Plaintiff to get rid of it, but before Plaintiff could respond that Fazzolari gave
him permission to bring it, Mendibles smacked Plaintiff's coffee cup from his hands
because he was not supposed to have it.  Plaintiff swore at Mendibles when the
coffee spilled and burned him, and Mendibles slapped Plaintiff once in the face.
Although this Court finds a slap is an objectively unreasonable use of force under the
circumstances alleged by Plaintiff, the law requires that the constitutional right be

clearly established by precedent in *analogous circumstances*, not broadly defined rights, before qualified immunity is denied.

Neither the Supreme Court nor the Third Circuit has held that slapping a pretrial detainee in these circumstances—after a minor verbal provocation while escorting a detainee to disciplinary confinement for disobeying an order—is objectively unreasonable as a matter of law. Without factually similar precedent or a robust consensus of court decisions condemning such conduct, of which this Court finds none, qualified immunity must therefore be granted to Mendibles for this incident.

### D. Mendibles, Hines and Govan Are Not Entitled to Summary Judgment on the Elevator Incident

The Officer Defendants argue they are entitled to summary judgment on Plaintiff's Fourteenth Amendment excessive force and failure to intervene claims because "Plaintiff has failed to present any evidence other than his unsupported self-serving testimony that he was assaulted by any of the Defendants after the single push to the face by Mendibles." [Officers' Br. at 28.]  The Officer Defendants contend, for the following reasons, that no reasonable juror could conclude they used any force after the initial slap or shove to the face by Mendibles.

- Plaintiff did not report the use of force by Hines, Govan and Mendibles and Fazzolari's failure to intervene in any of his initial incident reports to Cumberland County Jail or during the October 7, 2021 interview;

- There is no evidence of injuries consistent with punching and kicking;

- There are no other eyewitness accounts;

- On January 13 and 15, 2022, Plaintiff admitted to Hines and Govan that he sued all officers present on the advice of his attorney, even though Hines and Govan did not use force on him.

[*Id.* at 28-29.]

Plaintiff opposes summary judgment for Mendibles, Hines, Govan and Fazzolari on the elevator incident, claiming there is ample evidence in the record to support his claims. [Pl's Br. Opp'n Officers at 18.] Plaintiff cites generally to his Counterstatement of Material Facts. [*Id.*]

In their reply brief, the Officer Defendants discount Lawson's Deposition transcript and any adverse inference based on the allegation of spoliation of the surveillance video and submit Plaintiff provides no evidence but his self-serving testimony in support of his claims. [Officers' Reply Br. at 27.] This is not a case of competing testimony, they contend, because "Plaintiff essentially admits by omission that the other officers never used any force." [*Id.*] They explain: (1) Plaintiff submitted written complaints about the coffee incident with Mendibles but never complained about the conduct of the other officers; (2) Plaintiff only complained to Investigator Hoffman about Mendibles spilling his coffee and slapping him; and (3) Plaintiff has no evidence of injuries from the alleged assault. [*Id.* at 27-28.]

Plaintiff need not produce corroborating evidence of his deposition testimony; a plaintiff's sworn deposition testimony alone may be sufficient to create a genuine dispute of material fact. *v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018). Defendants point to inconsistencies in Plaintiff's testimony, his failure to report the elevator

incident, and the absence of corroborating evidence of injury.  These arguments go to credibility, not admissibility.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Accordingly, although Defendants make good arguments that cast great doubt on Plaintiff's credibility, those are more proper for trial.  The Court thus concludes that the elevator incident presents disputed issues of fact that must be resolved by a jury.  Summary judgment is inappropriate on the Fourteenth Amendment excessive force and failure to intervene claims against Hines, Mendibles, Govan and Fazzolari.

### E.  Summary Judgment Is Granted to Cumberland County

Plaintiff, having settled his claims against CFG Health Systems, Inc., does not oppose summary judgment in favor of Cumberland County on Count Three, pertaining to Plaintiff's medical care.  [Pl's Br. Opp'n CC at 7, n. 1.]  Cumberland County is granted summary judgment on that claim.  The Court turns to Cumberland County's motion for summary judgment on Plaintiff's excessive force and failure to intervene claims against it, and considers the facts in the light most favorable to Plaintiff.

### 1.    *Legal standard*

A municipality may be held liable under 42 U.S.C. § 1983 only where the alleged constitutional violation was caused by a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  To prevail, a plaintiff must show: (1) the existence of a policy or custom; (2) that policymakers acted with deliberate indifference to the known or obvious consequences of that policy or custom; and (3) that the policy or custom was the "moving force" behind the constitutional violation. *Bd. of Cnty. Comm'rs v. Brown* ("*Brown*"), 520 U.S. 397, 404-06 (1997).

"The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy."  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).  A plaintiff seeking to impose municipal liability for failure to train or supervise must show that the deficiency reflects the municipality's "deliberate indifference to the rights of persons with whom the [employees] come into contact."  *City of Canton v. Harris* ("*Harris*") 489 U.S. 378, 388 (1989).  Deliberate indifference is a stringent standard; a municipal policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."  *Brown*, 520 U.S. at 407  (citation modified).  Ordinarily, a plaintiff demonstrates deliberate indifference through a pattern of similar constitutional violations by untrained employees.  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  Where such a pattern exists, policymakers are on notice that a particular

omission in training or supervision is causing employees to violate constitutional rights, and a failure to act supports liability. *Id.* at 62–63.

For example, in *Thomas*, the Third Circuit held that "[g]iven the frequency of fights occurring between inmates in the CCCF that could lead to constitutional violations for failure to protect, the lack of training [on conflict de-escalation] here is akin to "a failure to equip law enforcement officers with specific tools to handle recurring situations." 749 F.3d at 225 (quoting *Brown*, 520 U.S. at 409)). On the other hand, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

In limited circumstances, deliberate indifference may be established without a pattern, where the need for training is "so obvious" and the lack of training "so likely to result in the violation of constitutional rights" that a policymaker's inaction amounts to deliberate indifference. *Harris*, 489 U.S. at 390, n 10. The Supreme Court hypothesized that failure to train officers pursuing fleeing felons on the constitutional limits of deadly force may fall within this narrow exception. *Id.*

The Third Circuit has applied these principles, recognizing that inadequate training or supervision concerning use of force and conflict de-escalation can sustain a claim where deliberate indifference is shown. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 582–86 (3d Cir. 2004) (juvenile facility staff training); *Estate of Roman*, 914 F.3d at 798–99 (police training); *Forrest v. Parry*, 930 F.3d 93,

106–07 (3d Cir. 2019) (alleging inadequate supervision and discipline of police officers by Internal Affairs).

### 2. The Parties' Arguments

Cumberland County argues Plaintiff cannot establish lacking of training or supervision caused Mendibles to unreasonably slap Plaintiff because (i) a slap is not per se unconstitutional and may be reasonable depending on the *Kingsley* factors; (ii) officers testified they understood that force like Plaintiff alleges would be excessive, indicating training conveyed the constitutional limits; (iii) the County maintained written policies and provided training via firearms recertification and NJ Learn; and (iv) Plaintiff offers no expert testimony and points to no specific training deficiency tied to the slap. [CC's Reply Br. 4–7.] Cumberland County also highlights that Plaintiff's own post-incident grievance focused on the coffee incident without reporting any further use of force. [*Id.* at 4–5.]

Plaintiff responds that corrections officers were not consistently trained on passive, non-aggressive resistance; that Cumberland County lacked or failed to implement clear guidance about use of force in such scenarios; and that officers expressed inconsistent understandings about whether "slaps" or "punches" were ever appropriate. [Pl.'s CSOMF ¶¶ 32–37, 34.] In reply, Cumberland County points to a written "Passive Resistance/Work Stoppage" policy in effect since 2012, which was produced to Plaintiff in discovery. [CC's RCSOMF ¶ 32; Docket No. 132-2, Ex. 2, Policy No. 10.21.] Policy No. 10.21 confirms procedures for passive resistance and instructs that "Inmates shall be physically escorted … using the minimum action

necessary" and that "Levels of force shall be strictly adhered to."  [Policy No. 10.21 at 1-2.]

### 3. Cause of Fazzolari's alleged misconduct

To begin the analysis, Plaintiff must tie a specific training or policy deficiency to the officer's decision in a way that makes the violation likely in such circumstances. *See Canton*, 489 U.S. at 391; *Brown*, 520 U.S. at 404–05.  The Court looks to each Defendant's conduct separately.

First, Fazzolari's conduct of granting Plaintiff permission to wear his sweatshirt and bring his coffee to the disciplinary pod reflects his practice of de-escalation or conflict resolution.  The parties agree Plaintiff began his escort with Fazzolari and Hines cooperatively when those concessions were made.  Cumberland County's guiding principle on use of force is to use as little as necessary, a policy which requires attempting de-escalation and conflict resolution before resorting to force.  Cumberland County has a written passive-resistance policy requiring "minimum action necessary" [Policy No. 10.21], which conforms, as discussed below, to the officers' understanding of Cumberland County's use of force policy.

Fazzolari was a training supervisor at Cumberland County for a year, approximately in 2016-2017.  [Docket No. 119-7, Ex. 6, Deposition of Sergeant John Fazzolar[i] ("Fazzolari Tr.")].  He demonstrated a good understanding of Cumberland County's use of force policy.  [*See generally* Fazzolari Tr.]  Specifically, he testified the use of force policy covers failure to intervene, for example, in the N.J. Learn training.  [Fazzolari Tr.  33:21 to 36:23.]  The gist of the training is "you have

a duty to intervene [when you see excessive force being used]. It's your legal obligation as a law enforcement officer. You always try to prevent it ahead of time, before it happens, if you can see it." How you go about it depends on the scenario. [*Id.* at 36:11-23.] After the coffee incident, Fazzolari testified Plaintiff refused an order to turn around and go into the elevator. [*Id.* at 69:4 to 20.] The other officers used physical force to get Plaintiff on the elevator, and Fazzolari did not join them on the elevator. [*Id.*] Fazzolari agreed that punching, slapping or kicking a detainee in response to a verbal statement would amount to corporal punishment, and he had a duty to protect detainees from corporal punishment. [*Id.* at 15:5 to 17:15.]

Regarding Plaintiff's claim that SIU only substantiated excessive force claims that were corroborated by surveillance video, Fazzolari testified he was aware there was a video of this incident, "the whole place is pretty much under video monitoring." [*Id.* at 70:19 to 71:9.] The elevator did not have a camera because it was not logistically possible. [*Id.*] Here, however, the alleged force that Fazzolari allegedly failed to intervene with occurred while Plaintiff was dragged onto the elevator, and Plaintiff could not remember if it continued after the doors closed. Fazzolari believed Internal Affairs watched all use of force incidents caught on camera. [*Id.* at 71:17-73:13.] He believed it was common sense to watch and preserve the video because it was the most objective evidence of what occurred. [*Id.*] Based on the record, when the facts are viewed in the light most favorable to Plaintiff, a reasonable jury could not conclude a deficient policy or deficiency in training or supervising officers was the moving force behind Fazzolari's alleged

unconstitutional conduct.  Fazzolari understood Cumberland County's use of force policies, including the duty to intervene, and he knew most of the jail had surveillance cameras and SIU would watch every use of force incident caught on video, including the alleged coffee and elevator incidents here.

### 4. Cause of Mendibles alleged misconduct

When the facts are taken in the light most favorable to Plaintiff, Mendibles knocked the coffee out of his hand without giving him a chance to explain why he had it, and Mendibles slapped Plaintiff when he swore at Mendibles over spilling the coffee on him.  Plaintiff did not put forth sufficient evidence for a reasonable jury to conclude Mendibles slapped Plaintiff due to an inadequate policy, training or supervision.  Mendibles testified that the use of force training during firearms training covered every type of use of force.  [Docket No. 120-6, Ex. D, Deposition of Lt. Robert Joseph Mendibles ("Mendibles Tr.")].  In general, Mendibles' testimony presents a good understanding of Cumberland County's use of force policy.  [*See generally* Mendibles Tr.]  Specifically, Mendibles acknowledged that if the circumstances surrounding his slapping Plaintiff and then allegedly joining Hines in punching and kicking Plaintiff while Govan dragged him by chokehold to the elevator would be an inappropriate use of force.  [Mendibles Tr. 17:8-11, 18:13-17.] He also testified that, based on his training, it would be appropriate to slap, punch or kick a detainee if the detainee was physically assaulting someone, but it was otherwise inappropriate force.  [*Id.* at 24:2 to 25:19.]

Third, although Mendibles did not watch the video of the incident, he assumed that SIU would watch it because they review the videos for all uses of force. [*Id.* at 52:5-12.] Officers will often write to SIU and suggest they "look at this camera on this day" to determine what happened. [*Id.* at 53:1-18] Therefore, Plaintiff's suggestion that SIU's failure to substantiate an unreasonable use of force unless there is corroborating video evidence does little to suggest it was the cause of an unreasonable use of force against Plaintiff. With respect to SIU's alleged failure to discipline, Plaintiff provides only three examples, not a sufficient pattern to suggest a custom of failing to discipline that put Cumberland County on notice constitutional violations were likely to occur if policies or training and supervision went unchanged. Particularly when, like here, a pretrial detainee has the option of filing a criminal complaint.

### 5. *Cause of Govan's alleged misconduct*

Govan is alleged to have put Plaintiff in a chokehold and dragged him to the elevator while Mendibles and Hines punched and kicked him. Govan testified about his use of force training and displayed a good understanding of Cumberland County's policies. [*See generally* Docket No. 119-10, Ex. 6, Declaration of Sergeant Darren Govan ("Govan Tr.")] Officers have to fill out a use of force form whenever one of five uses of force are used on an inmate. [*Id.* at 19:8-12.]

Govan did not know there was a video of the alleged coffee and elevator incidents. [*Id.* at 28:19 to 29:4.] Govan believed the procedure was that after a use of force report was completed, it was sent to Internal Affairs with the video, which

was the most objective evidence of what occurred.  [*Id.* at 63:5-24.]  The grievance

process for an inmate who alleges use of force is to refer them to SIU.  [*Id.* at 70:25 to

71:6.]  Based on the record, when the facts are viewed in the light most favorable to

Plaintiff, a reasonable jury could not conclude a deficient policy or deficiency in

training or supervising officers was the moving force behind Govan's alleged

unconstitutional conduct.

### 6.  *Cause of Hines alleged misconduct*

[Docket No. 119-8, Ex. 4, Deposition of Lt. Timothy Hines ("Hines Tr.")].

Hines testified that he was trained on all types of use of force, twice a year.  [*Id.* at

16:6 to 17:6.]  He received copies of the jail's policies and procedures, and he reads

them, particularly when they are updated.  [*Id.* at 20:3 to 21:14.]  Hines filled out a

use of force form on October 2, 2021 because officers are required to fill it out report

whenever force is used.  [*Id.* at 41:6 to 24.]  The physical force Hines reported was

pushing Plaintiff's head back and "going in and grabbing him," which he explained

was how Govan grabbed Plaintiff's jumper and pushed him into the elevator.  [*Id.* at

40:2-15, 42:6 to 13.]  Hines believed it would be appropriate for an officer to slap an

inmate who was aggressive and threatening, but only if the inmate was advancing

toward him.  [*Id.* at 50:5-51:1.]  Hines understood it was Cumberland County's

policy to only use "as much force as reasonably necessary … to accomplish an

objective…."  [Id. at 51:2-6.]  He also knew the coffee and elevator incidents

occurred "under a security video" and Hines watched the video to fill out his report.

[*Id.* at 55:10-56:2.]  Hines believed Lieutenant Martinez, the Shift Commander,

probably watched the video as well. [*Id.* at 56:4-6.] Hines believed Internal Affairs would preserve the video. [*Id.* at 60:4 to 11.] Hines understood Cumberland County's policy was to videotape any incident where an inmate refused an order. *[Id.* at 65:12 to 66: 6.] Based on the record, when the facts are viewed in the light most favorable to Plaintiff, a reasonable jury could not conclude a deficient policy or deficiency in training or supervising officers was the moving force behind Hines' alleged unconstitutional conduct. For the reasons discussed above, Cumberland County is entitled to summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant qualified immunity to Mendibles on the excessive force claim regarding the coffee incident; the Court will deny Mendibles, Hines, Govan and Fazzolari's motion for summary judgment on the excessive force and failure to protect claims regarding the elevator incident; and the Court will grant Cumberland County's motion for summary judgment on the municipal liability claims. An appropriate Order follows.

Date:  **August 28, 2025**

> s/ Renée Marie Bumb
> RENÉE MARIE BUMB
> Chief United States District Judge